WALLACH, Circuit Judge,
dissenting in part.
I do not agree that the “transmitting data” terms require transmission of all of the accumulated data. Rather, because I conclude that the terms require transmission of only such data sufficient to provide a representative picture of the aircraft flight performance, I dissent in part.
The majority relies upon the rule: “The construction that stays true to the claim language and most naturally aligns with the patent’s description of the invention will be ... the correct construction.” Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed.Cir.2005) (en banc) (quoting Renishaw PLC v. Marposs Societa’ per Azioni, 158 F.3d 1243, 1250 (Fed.Cir.1998)). However, the new construction the majority adopts, requiring “transmitting all of the aircraft data that has been accumulated or stored or generated,” Maj. Op. *970 at 965 (emphasis in original), is not supported by the claim language, specification, or prosecution history. Moreover, it improperly narrows the claim language, limiting an otherwise broadly drafted claim. See Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 906 (Fed.Cir.2004) (quoting Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1327 (Fed.Cir.2002)) (“[T]he claims of a patent will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using ‘words or expressions of manifest exclusion or restriction.’ ”).
The majority determines that it is reasonable that “the” data set transmitted must be “all” the data that was accumulated and stored on the basis that “identical language is found in multiple steps within the same claim” which “begs for some antecedent basis.” Maj. Op. at 963. Claim 1 of the '319 patent states, in part:
A method of providing data from an aircraft comprising:
[a] generating aircraft data representative of the continuously monitored aircraft flight performance during an entire flight of the aircraft from at least take-off to landing;
[b] accumulating and continuously storing the generated aircraft data ... to create an archival store of such aircraft data;
id] after the aircraft completes its flight and lands at an airport, transmitting the accumulated, stored generated aircraft data ...; and
[d] demodulating the received spread spectrum communications signal to obtain the accumulated, aircraft data representative of the flight performance of the aircraft during an entire flight of the aircraft from take-off to landing.
'319 patent col. 16 1. 52-col. 17 1. 7 (emphases and paragraphing added). The majority refers to “the” data set, but “the” data set is not consistently defined throughout. Instead, “data” is modified as “generated aircraft data” in limitation [b]; as “accumulated, stored generated aircraft data” in limitation [c]; and finally, as “accumulated, aircraft data representative of the flight performance” in limitation [d].[1]
The only consistent term in each limitation is “aircraft data” which is defined in limitation [a] to mean “data representative of ... aircraft flight performance.” The way “aircraft data” is described in the various limitations of the claims implies discretion to generate, store, transmit, and demodulate only such data necessary to be “representative” of flight performance. Thus, the claim does not require that “all” of the accumulated, stored data be transmitted, as long as the transmitted data is representative of the aircraft flight per *971 formance. In fact, the term “all” is nowhere to be found in the claim language. See Maj. Op. at 963-64. Accordingly, defining limitation [c] to require transmitting “all” of the flight performance data accumulated is counterintuitive within the context of the claims. See Hockerson-Halber-stadt, Inc. v. Converse Inc., 183 F.3d 1369, 1374 (Fed.Cir.1999) (“Proper claim construction ... demands interpretation of the entire claim in context, not a single element in isolation.”).
Additionally, the majority concedes that nothing in the specification indicates how much data should be accumulated, stored, or transmitted. The prosecution history— which suggests that Harris intended his invention to create a comprehensive picture representative of an entire flight— likewise does not require a more restrictive reading.[2] See Maj. Op. at 964-65. Thus, there is no reason to limit the data accumulated, stored, or transmitted to anything but that which would be representative of flight performance. See Liebel-Flarsheim, 358 F.3d at 906. Because the majority’s construction unnecessarily restricts the claim terms without support from the claim language, specification, or prosecution history, I respectfully dissent.

. The majority opinion cites to Process Control to support its reasoning. Maj. Op. at 963-64 (Process Control Corp. v. HydReclaim Corp., 190 F.3d 1350 (Fed.Cir.1999)). However, in that case the language provided meaning to an otherwise indefinite term, whereas here FedEx did not challenge Harris’s expert opinion that one skilled in the art would understand how much data would be required to provide a comprehensive long-term picture of flight performance. See J.A. 1599-1602. Here the only identical language used throughout the claim is "aircraft data,” thus the antecedent basis the majority references should be to limitation [a] where "aircraft data” is first modified. Accordingly, the antecedent basis for each of the remaining limitations is to "aircraft data” which would provide "aircraft data representative of ... flight performance.” Furthermore, this court has since provided additional guidance on Process Control, explaining that the construction of "discharge rate” was supported by, not reliant upon, the antecedent basis; a "patentee’s mere use of a term with an antecedent does not require that both terms have the same meaning.” Microprocessor Enhancement Corp. v. Texas Instruments Inc., 520 F.3d 1367, 1375 (Fed.Cir.2008).

. Before the PTO, Harris distinguished its invention from prior art by addressing the difference between sending real-time data at various intervals (as was done in Ng by a train transmitting data as it traveled past fixed locations), J.A.3272-74, as opposed to accumulating data to gain a comprehensive picture representative of an entire flight. Harris’s representations during reexamination reveal nothing that limits the scope of transmitting data to all of the accumulated and stored data. The majority holds that the prosecution history cannot overcome the natural reading of the claim, but because its reading of the claim unnecessarily adopts a limitation, it cannot be the most reasonable interpretation.